IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL ORGANIZATION OF SOCIAL SECURITY CLAIMANTS' REPRESENTATIVES, Plaintiff,<br><br>vs.<br><br>KAPITAL MEDIA PRODUCTIONS S.L., D/B/A LA GRADA ONLINE, and JAVIER GABARRI BARDAVIO, Defendants. | No. 1:24-cv-10788<br><br>JUDGE JORGE L. ALONSO<br>MAGISTRATE JUDGE BETH W. JANTZ |

## FIRST AMENDED COMPLAINT

Plaintiff National Organization of Social Security Claimants' Representatives (NOSSCR or Plaintiff) brings this action against Defendants Kapital Media Productions S.L. (Kapital) and Xavier Gabarri Bardavio (Gabarri Bardavio), collectively the Defendants, and states:

## PRELIMINARY STATEMENT

1.     Beginning in Spring 2024 and continuing, Defendants, using the La Grada EN website, published articles purporting to provide news regarding the U.S. Social Security Administration (SSA).

2.     An article dated May 31, 2024, included the headline, "Increase in Social Security benefits: $600 extra payment in June for those over 62".

3.     On June 3, 2024, SSA's Commissioner indicated that SSA's national 800 phone service received 140,000 more phone calls than it had a few days earlier due to a "bogus news story about a $600 payment increase". Kapital's false articles have caused delays in the already overburdened SSA teleservice system, costing NOSSCR's members substantial time and money.

1

4.    NOSSCR seeks to stop Defendants from wasting the time and money of NOSSCR's

members and SSA and to obtain reimbursement for the economic losses suffered by NOSSCR's

members.

## JURISDICTION AND VENUE

5.    This is an action under the Racketeer Influenced and Corrupt Organizations (RICO)

Act, 18 U.S.C. §§ 1961, *et seq.,* the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051, *et seq.,* and

Illinois common-law.

6.    This Court has jurisdiction pursuant to 28 US.C. § 1331 as this case is a civil action

arising under the laws of the United States and pursuant to 28 U.S.C. § 1338(a) as this case is a

civil action arising under an act relating to trademarks.

7.    This Court has ancillary jurisdiction over Plaintiff's state law claim under 28 U.S.C.

§ 1367.

8.    This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive

relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9.    Defendants are subject to personal jurisdiction in this district because they

purposefully directed their activities at U.S. residents, generating substantial traffic from U.S. IP

addresses. Defendants' use of U.S.-based advertising networks, including partnerships with

companies like Taboola and NerdWallet, further establishes their deliberate engagement with the

U.S. market, satisfying the 'minimum contacts' standard required for personal jurisdiction.

10.    Venue is proper in this district under 18 U.S.C. § 1965(a) as Defendants transact

their affairs within this district and 28 U.S.C. § 1391(b)(2) as a substantial part of the events or

omissions giving rise to Plaintiff's claims occurred within this district.

## PARTIES

2

11.    NOSSCR is a specialized bar association for attorneys and advocates representing Social Security Disability Insurance and Supplemental Security Income claimants throughout the adjudicative process.

12.    NOSSCR asserts organizational standing on behalf of its members, including over 200 members in the State of Illinois.

13.    NOSSCR members interact with SSA daily, often numerous times by phone and otherwise.

14.    NOSSCR's members use SSA's national teleservice system thousands of times a day regarding claims for benefits and the payment of claims.

15.    Defendant Javier Gabarri Bardavio is an individual believed to reside in Terrassa, Spain. Gabarri Bardavio is responsible for the false and misleading articles published by Kapital on La Grada EN.

16.    Gabarri Bardavio is the sole owner and sole administrator of Kapital.

17.    Kapital is a corporation based in Terrassa, Spain, specializing in television programming, broadcasting, and internet activities.

18.    Gabarri Bardavio founded Kapital in 2024 to produce and distribute media content. The company's activities align with providing media content for broadcast and digital platforms.

19.    Kapital operates La Grada Online. La Grada Online is a sports news platform primarily dedicated to covering RCD Espanyol, a football (soccer) club based in Barcelona. The website provides news, match reports, expert analyses, and fan engagement content focused on the team.

20.    La Grada Online includes La Grada EN, advertised as a platform for relevant American news, including sports and financial updates. The website contains links to numerous sensationalized topics, such as Social Security updates for Americans.

3

## STATEMENT OF FACTS

21.    Gabarri Bardavio, as the sole owner and administrator of Kapital, formed an enterprise consisting of Kapital, its employees and contractors (including web designers, content promoters, and other actors), and the related online platform, La Grada EN, to disseminate false information about Social Security benefits."

22.    Gabarri Bardavio, Kapital, La Grada Online, and La Grada EN conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

23.    Since spring 2024, the Defendants have published articles regarding Social Security on La Grada Online and La Grada EN.

24.    The Defendants' shared purpose is to create and disseminate false and misleading articles about Social Security to generate advertising revenue.

25.    The Defendants have an ongoing organization and enterprise, functioning as a continuing unit with established roles for web designers, content promoters, and article authors.

26.    The Defendants have operated their enterprise since Spring 2024, demonstrating longevity sufficient to pursue its purpose of disseminating false information and generating revenue.

27.    The Defendants' activities affect interstate commerce by reaching millions of individuals in every state, including Illinois, causing them to contact the Social Security Administration (SSA) based on false information.

28.    The Defendants directed the creation and publishing of false articles, playing a managerial role in the enterprise.

29.    The Defendants' actions involved more than merely providing routine services; they involved directing the enterprise's affairs to deceive the public and generate advertising revenue.

4

30. The Defendants acted in concert to disseminate false information, exceeding the level of cooperation inherent in everyday commercial transactions.

31. The Defendants, to further the enterprise, committed at least two predicate acts of wire fraud by using interstate wires to transmit false articles, including but not limited to the May 31, 2024 article titled 'Increase in Social Security benefits: $600 extra payment in June for those over 62,' and the August 9, 2024 article titled 'Social Security Benefit Boost on August 30 - Extra Payment Announced for Some Retirees,' throughout the United States."

32. The predicate acts of wire fraud are related by their common purpose of deceiving the American public about Social Security benefits, their common result of increased calls to SSA, and their common method of dissemination through La Grada Online and La Grada EN.

33. The predicate acts of wire fraud demonstrate continuity through repeated dissemination of false articles over several months, from May 2024 to October 2024, and the ongoing threat of continued publication of comparable articles.

34. The predicate acts of wire fraud are not isolated events but part of an ongoing scheme to generate advertising revenue by disseminating false information.

35. Defendants' actions directly and proximately injured NOSSCR members. The false articles caused a demonstrable increase in call volume to SSA, resulting in longer wait times for NOSSCR members attempting to contact SSA on behalf of their clients. These extended wait times translated directly into lost billable hours and decreased productivity for NOSSCR members.

36. Beginning in Spring 2024 and continuing, the Defendants, using the La Grada EN website, published numerous articles online purporting to provide news regarding SSA.

37. One online article, dated May 31, 2024, included the headline, "Increase in Social Security benefits: $600 extra payment in June for those over 62".

38.    The article states "As the SSA recently informed, retired workers over 62 years old will receive an extra $600 payment in June due to the cost of living adjustment (COLA)."

39.    SSA did not state it would make a $600 payment, and it did not make one.

40.    That statement was false when made and is still false. Defendants knew or should have known the statement was false when made.

41.    On June 3, 2024, Martin O'Malley, Commissioner of Social Security, indicated that SSA's national 800 phone service received 140,000 more phone calls than it had a few days earlier due to a "bogus news story about a $600 payment increase".

42.    On June 14, 2024, SSA's Office of Inspector General (OIG) released a statement saying that:

> Scammers are circulating misinformation about a $600 fake Social Security benefit increase that they allege will be issued in June 2024. Any information regarding a current $600 increase is false and should be ignored.

43.    The OIG statement continued:

> "Reports of a $600 payment increase are FALSE, please be aware and don't fall for this stunt," said Social Security Commissioner Martin O'Malley. "We are alerting the public to these falsehoods, and we are addressing these bogus claims at the source. No Cost-of-Living Adjustment (COLA) increase will occur until January 2025."

44.    SSA operates 37 Teleservice Centers, employing over 4,000 people, including one at the Harold Washington Social Security Center in Chicago, Illinois. These centers serve callers who contact the agency through its toll-free telephone number.

45.    Even if SSA shifted traffic among the SSA teleservice centers, telephone response times during peak periods are significantly longer. The Defendants' false article caused significant delays in the already overburdened SSA teleservice system.

46.    The additional delays cost NOSSCR's members, including NOSSCR's members in Illinois, significant lost time and money.

6

47. On June 10, 2024, the Defendants ran an article titled "$600 increase in Social Security benefits in June: Administration clarifies what will happen."

48. The article stated, "There have been a lot of rumors and information about which recipients will be eligible to receive the $600 SSI payment boost on their Social Security income."

49. Defendants' article did not reveal that it was the source of the rumors and misinformation.

50. In July 2024, *Forbes* magazine ran an article discussing the La Grada article, stating:

> The reports are simply false. They apparently were generated by websites that try to attract a lot of public attention to maximize their rankings in online search engines. This helps these "content farms" charge more for the ads on their websites.

51. On August 9, 2024, Defendants published an internet article titled, "Social Security Benefit Boost on August 30 – Extra Payment Announced for Some Retirees."

52. The article asserts that some recipients would "receive a double Social Security benefit" in August.

53. Defendants' article later acknowledged that "beneficiaries should understand that this won't come as an extra Social Security benefit payment but rather is just a payment in advance."

54. There was no Social Security "boost" on August 30 and no "extra payment."

55. On October 2, 2024, Defendants published an internet article entitled "Cuts in Social Security checks starting in 2026 - FED warns."

56. The title suggests that the Federal Reserve (FED) has warned of specific Social Security cuts starting in 2026. However, the FED does not control Social Security benefits, which Congress and SSA determine.

57. The October 2 article also states that retirees should "expect a smaller Social Security check" in 2026 due to reduced cost-of-living increases allegedly tied to FED warnings. This is false or misleading, as cost-of-living adjustments depend on inflation metrics (CPI-W) and are determined by SSA, not the FED.

58. On October 3, 2024, Defendants published an internet article entitled, "Total change in Social Security as of October 10 - List of all changes affecting retirees."

59. Claims of a "total change" in Social Security gave the false impression of a complete overhaul, while only standard updates (such as cola adjustments) occurred.

60. The article suggested that SSA will make "additional changes and modifications" to its benefits system on October 10, implying significant policy changes beyond the annual cost-of-living adjustment. However, SSA made no transformative adjustments on this date.

61. Advising retirees to update their information "before October 10" alarmed readers unnecessarily, as this is standard guidance unrelated to any impending structural changes on that specific date.

62. Defendants' statements were not true when made and are not true. Defendants knew or should have known that the statements were not true when made.

63. On October 5, 2024, Defendants published an internet article entitled "Everything's changed forever in Social Security in 2024 - The list of changes that will affect you."

64. The article's title claims that Social Security will "never be the same again," implying drastic, sweeping reforms. The article only discusses typical annual updates, such as cost-of-living adjustments and minor rule changes.

65. The article also describes average benefit Increases as "significant" due to a cost-of-living adjustment, overstating the impact. While cost-of-living adjustments help offset inflation,

the net purchasing power for Social Security recipients remains about the same from year to year.

66.     Defendants' statements were not true when made and are not true. Defendants knew or should have known that the statements were not true when made.

67.     On October 6, 2024, Defendants published an internet article entitled "Double SSI payments in November after the 2025 Scola announcement – Will the checks come with increases?"

68.     The phrase "double SSI payments" misled readers into believing recipients would receive twice the regular benefit. The phrase referred to a quirk in the payment schedule related to payments aligned around weekends and holidays, not a benefit increase.

69.     Asking, "Will the checks come with increases?" about November mislead readers into expecting a November-specific increase, while cost-of-living adjustments take effect in January.

70.     On October 7, 2024, Defendants published an internet article entitled, "Social Security is changing everything – here's how it will affect US retirees."

71.     The assertion that "Social Security is changing everything" is misleading, as the article focuses on procedural updates, such as an online form submission system, which does not impact benefits eligibility, amounts, or program structure.

72.     The phrase "everything will change" created unnecessary concern about benefits or eligibility while the change only applied to document submission methods.

73.     On October 7, 2024, Defendants published a second internet article, "Good news for these retirees—They'll make more money than anyone else with Thursday's check increase."

74.     SSSA paid no benefits on Thursday, October 10, 2024.

75.     The statement that some retirees "will make more money than anyone else mislead readers, as SSA uniformly applies cost-of-living adjustments. The increase each person receives is simply proportional to their benefit amount, not an exceptional gain.

76.     By implying retirees could see substantial gains, the article overstated the impact of cost-of-living adjustments, which offset inflation rather than provide a discretionary raise.

77.     On October 9, 2024, Defendants published an internet article entitled "Total Change in US Retirement Age - this is the new projected increase that seniors don't like."

78.     The article's title implies that a retirement age increase is imminent, but it merely discusses proposed changes in Congress rather than any confirmed adjustments.

79.     Emphasizing a "new projected increase" unnecessarily alarmed readers, who believed their retirement age was about to change, although legislative proposals often face extended debate and lack certainty.

80.     On October 9, 2024, Defendants published a second internet article, "Everything About Social Security Will Change Forever in October - List of Retirees Who Will Make More Money."

81.     The phrase "everything about Social Security will change forever" exaggerates the effect of standard cost-of-living adjustments. While cost-of-living adjustments preserve purchasing power, they are a routine, annual adjustment rather than a systemic overhaul.

82.     The article implies that all Social Security beneficiaries will "make more money" due to the upcoming cost-of-living adjustment. This is misleading because cost-of-living adjustments match inflation and do not increase real purchasing power.

83.     Those statements were false when made and are still false. Defendants knew or should have known the statement was false when made.

10

84.    The Defendants' statements increased call volumes to SSA as readers relied on the false information provided by the Defendants.

85.    SSA's increased call volume led to increased wait time for numerous members of the public and NOSSCR members, including NOSSCR's Illinois members.

86.    The defendants' internet activities complained of herein affect interstate commerce as they reach millions of individuals in every state.

87.    Defendants' internet activities complained of herein contact many thousands – perhaps millions - of Illinois residents.

88.    The Defendants made false statements about Social Security in the context of commercial advertising and promotion. As evidenced by the promotional content embedded within the articles, the Defendants strategically published misleading articles alongside advertisements for financial services targeting vulnerable seniors.

89.    Defendants' business model relies on generating traffic through sensational headlines and ties directly to their revenue from advertising partners such as WalletJump and ThePenniSaver.

90.    Due to the Defendant's false and misleading statements, many NOSSCR members, including NOSSCR's Illinois members, lost considerable time and money.

91.    Defendants continue to publish articles online with false and misleading information regarding Social Security benefits to increase website traffic and revenue.

92.    Thousands of online consumers continue to rely on Defendants' false and misleading statements and call SSA.

93.    Unless restrained, Defendants will continue to harm NOSSCR and its members, including its Illinois members.

94.     Defendants received payment from advertisers based on the number of times readers accessed an article.

95.     Defendants intentionally included false and misleading statements in their headlines and articles to increase the number of times readers accessed an article.

96.     Defendants' headlines and articles deceived or were likely to mislead many individuals.

97.     Defendants used their headlines and articles to affect consumer behavior.

98.     Defendants used their headlines and articles in interstate commerce.

99.     Defendants originated their headlines and articles in Spain and distributed them online throughout the United States.

## CLAIMS FOR RELIEF

### First Claim – Civil RICO

44.     Defendant engaged in a pattern of racketeering activity violating 18 U.S.C. § 1962(c) by disseminating false and misleading information through its website, La Grada EN.

45.     This pattern of activity involved repeated acts of wire fraud in violation of 18 U.S.C. § 1343, as Defendants used interstate wires to transmit its false articles throughout the United States.

46.     Defendants designed these articles to deceive the public and drive traffic to Defendants' website, generating advertising revenue. NOSSCR members suffered economic injury due to increased wait times and lost productivity caused by the influx of calls to SSA resulting from Defendants' false publications.

47.     Defendants' actions constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5), involving at least two predicate acts of wire fraud committed over at least six

months. From September 2024 to October 2024, Defendants published at least six articles, each containing false statements about Social Security benefits, including false claims of imminent benefit cuts and misleading reports of double payments for SSI recipients.

48.     These actions demonstrate both 'closed-ended continuity,' through repeated fraudulent acts over a specified period, and 'open-ended continuity,' as the fraudulent scheme continues to the present, posing an ongoing threat of repetition.

49.     Defendants will continue engaging in their racketeering activity pattern unless restrained.

## Second Claim – Lanham Act

50.     Defendants made false or misleading statements in commercial advertisements that deceived or tended to deceive a sizable portion of the audience, were material to consumer decisions, involved interstate commerce, and caused or were likely to cause injury to NOSSCR.

51.     Defendants' articles, published on its website, constitute commercial advertisements that generate advertising revenue.

52.     The articles' false and misleading headlines and content regarding non-existent Social Security benefit payments and increases deceived a substantial portion of the public, leading to increased calls to SSA.

53.     Defendants' articles misrepresented the nature of SSA's services.

54.     Defendants' misrepresentations and deception are material to consumer decisions, as they directly impact the behavior of individuals seeking information about Social Security benefits.

55.     Defendants disseminated the articles via the Internet, involving interstate commerce.

56.     NOSSCR and its members suffered injury due to the increased burden on SSA's resources, resulting in lost time and money to NOSSCR's members.

**57.**     Unless restrained, Defendants will continue to engage in their pattern of misrepresenting SSA's services.

### Third Claim – Illinois Fraud

58.     Defendants knowingly made false statements intending to induce the American public to rely on those statements, resulting in damages.

59.     The Defendants published articles online containing false information about Social Security benefits. The articles were accessible to the public and NOSSCR members in Illinois.

60.     Members of the public, relying on the veracity of the information presented, experienced increased call wait times and lost productivity due to the surge in calls to SSA caused by Defendants' false publications.

61.     Defendants' actions have injured NOSSCR and its members, including over 200 NOSSCR members in Illinois.

62.     This reliance and resulting harm constitute actionable fraud under Illinois law.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court:

1.     Enter a declaratory judgment that Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"), by engaging in a pattern of racketeering activity, including wire fraud in violation of 18 U.S.C. § 1343.

2.     Enter a declaratory judgment that Defendants violated the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, by making false or misleading representations in commercial advertising.

3.      Award Plaintiff treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) for Defendants' violations of RICO.

4.      Award Plaintiff actual damages, or at the Court's discretion, the profits Defendant wrongfully obtained because of its false advertising, together with costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a) for Defendants' violations of the Lanham Act.

5.      Award Plaintiff actual damages and costs for Defendants' fraudulent conduct under Illinois law.

6.      Preliminarily and permanently enjoin Defendant, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with them, from publishing or disseminating any further false or misleading statements regarding Social Security benefits including, but not limited to, statements regarding the availability, amount, or timing of such benefits.

7.    Grant such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

**NATIONAL ORGANIZATION OF SOCIAL SECURITY CLAIMANTS' REPRESENTATIVES**

**By:**

**/s/ David D. Camp**

_____

**David D. Camp**
National Organization of Social Security
Claimants' Representatives
1300 I Street NW, Suite 825
Washington DC 20005
Phone: (202) 849-6466
Email: david.camp@nosscr.org

_____

**Thomas A. Krause**
Admitted *pro hac vice*
National Organization of Social Security
Claimants' Representatives
1300 I Street NW, Suite 825
Washington DC 20005
Direct: (507) 703-2021
Email: tom.krause@nosscr.org

**/s/ Meredith Marcus**

_____

**Meredith Marcus**
Osterhout Berger Daley LLC
4256 N Ravenswood Ave, Ste 104
Chicago, IL 60613
Phone: (312) 561-3030
Fax: (312) 284-4773
Email: mmarcus@obd.law

**ATTORNEYS FOR PLAINTIFF**

16